RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _10 / 24 / 07_
         _08_

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL PARTA | CIVIL ACTON NO. 06-844 |
| VERSUS | JUDGE DOHERTY |
| GRAND ISLE SHIPYARD, INC., ET AL | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Currently pending before the Court is a Motion for Summary Judgment filed by defendants, Hercules Liftboat Company, L.L.C. ("Hercules") and Chevron U.S.A., Inc. ("Chevron"), wherein defendants seek "a dismissal of the plaintiff's claims on the basis that these defendants did not breach any legal duty to the plaintiff which caused or contributed to his alleged injury." [Doc. 32-1, p. 1]

### I. Background

This is an action for personal injury filed by Daniel Parta against Grand Isle Shipyard, Inc. ("GIS"), Chevron and Hercules arising out of an accident which occurred on May 22, 2005. On that date, plaintiff was working as a "fitter" on a Chevron platform located at South Timbalier 134-W, which is off the coast of Louisiana. Mr. Parta was employed by GIS, a company in the business of fabricating and repairing offshore platforms, including piping and structural work. [Doc. 32-2, p. 2] Mr. Parta was attaching platform deck extensions to the Chevron platform when he allegedly injured his right shoulder. At the time of the incident Hercules was providing a liftboat and crew to Chevron and was "assisting in platform fabrication work." [Doc. 32-8 ¶ 5]

All parties agree that at the time of the accident, the Hercules' liftboat was "jacked up adjacent to the platform and was using its' [sic] crane to transfer the platform deck extension from the liftboat to the platform." [Doc. 32-2, p. 2]   According to plaintiff (and undisputed by defendants), plaintiff and other GIS employees had previously installed deck extensions on the three lower levels of the platform without incident.  On those levels, the deck extensions were tied off to chain hoists in order to stabilize the extensions.[1]  However, on the fourth (and upper most) deck level, there was no chain hoist to tie off the deck extension.  Therefore, Hercules used its crane located on its vessel (and operated by its employee) to stabilize the extension while it was being attached by the GIS crew.  [Doc. 40-3, ¶¶ 19, 20]   According to plaintiff, he was pushing on a "come-along," in an attempt to move the extension in place, when the deck extension jerked due in part to the liftboat rocking on the seas, resulting in plaintiff's injury.

## II.  **Summary Judgment Standard**

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if

---

[1] According to plaintiff (and undisputed by defendant), each deck extension weighs approximately 10,000 to 12,000 pounds.

appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in <u>Lindsey v. Sears Roebuck and Co.</u>, 16 F.3d 616, 618

(5th Cir. 1994) (citations omitted):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.  However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted.

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> . . . .
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

<u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 884, 888-89 (1990)(quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

### III. **Analysis**

Chevron and Hercules seek "dismissal of *the plaintiff's claims* on the basis that these defendants did not breach *any legal duty* to the plaintiff which caused or contributed to his alleged injury." [Doc 32-1] (emphasis added) It appears defendants argue: (1) they owed no duty to plaintiff; and (2) if they did owe plaintiff a duty, they did not breach that duty. Defendants do not delineate the specific claims for which they seek dismissal; presumably they seek dismissal of all claims brought by plaintiff.[2]  However, not all claims referenced in plaintiff's complaint have been

---

[2] Although not abundantly clear, it seems defendants' desire dismissal of *all claims* made by plaintiff; however the claims plaintiff has brought, against which defendants, what law governs each claim, what duty is owed if any, is not abundantly clear.

addressed by defendants.

From this Court's review of the pending motion, the opposition thereto, plaintiff's complaint, and supplemental complaint, this Court will assume for these purposes only, the following claims have been asserted by plaintiff.

If plaintiff is deemed a seaman, plaintiff asserts the following claims --

1. A claim for negligence pursuant to the Jones Act against his "immediate employer" GIS [Doc. 1, ¶ 3], and against Chevron and Hercules, as his "borrowed employers." [Doc. 1, ¶ 4, Doc. 16, ¶¶ 14, 16]

2. A claim of unseaworthiness against Hercules, the vessel owner and operator, Chevron (as *pro hac vice* vessel operator), and, perhaps, GIS.[3]  [Doc. 1, ¶¶ 4, 10; Doc. 16, ¶ 16]

3. A claim for maintenance and cure, presumably, although not at all clear, against all three defendants, as plaintiff argues all defendants were "borrowed employers."[4] [Doc. 1, ¶ 13].

Alternatively, should it be determined plaintiff is not a seaman, plaintiff asserts the following claims --

1. A claim for vessel negligence pursuant to 33 U.S.C. § 905(b) against Chevron, as owner and/or operator *pro hac vice* of the vessel, and against Hercules as the vessel owner and operator.  [Doc. 1, ¶ 11; Doc. 16, ¶ 16]

---

[3] The Court notes the duty of seaworthiness is owed by the owner or operator of the vessel. *See e.g.*, Miles v. Melrose, 882 F.2d 976 (5th Cir. 1988). Plaintiff alleges at various paragraphs in his Complaint and Amended Complaint that all three defendants jointly operated the vessel involved in this matter. [Doc. 1, ¶¶ 4, 10; Doc. 16, ¶ 16] This Court makes no comment upon the factual basis of this claim and whether that basis exists under applicable law, rather merely notes plaintiff alleges operation of the vessel by all three defendants.

[4] Plaintiff also seeks compensatory damages for failure to pay maintenance and cure, attorney fees, legal interest from the date of the accident "or whatever date this court finds is applicable until paid," all costs of these proceedings and all general and equitable relief. [Doc. 1, ¶ 13] Whether plaintiff alleges all three defendants were borrowed employers pursuant to the Jones Act, *and* all three defendants could act as employers of the alleged *seaman* such as to trigger a maintenance and cure claim is also unclear. This Court makes certain assumptions for these purposes only. Of course if plaintiff were found not to be a seaman and thus not entitled to maintenance and cure or application of the Jones Act, the consequence of defendants being borrowed employers under an application of the LHWCA would be quite different. Thus, plaintiff's status is paramount in determining what duty, if any, is owed by each defendant.

2.   A claim of negligence against Hercules pursuant to § 905(b). [Doc. 16, ¶ 16]

3.   Although not abundantly clear, it appears plaintiff brings, by way of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C.A. § 1331 (2007) et seq., a claim of negligence pursuant to LA. CIV. CODE ANN. art. 2315 (2007) ("Liability for acts causing damages") against Chevron and perhaps GIS.[5]

4.   Although not abundantly clear, it appears plaintiff asserts a claim by way of OCSLA, against Chevron for "damage caused by ruin, vice or defect in things," pursuant to LA. CIV. CODE ANN. art. 2317.1 (2007) ("Damage caused by ruin, vice, or defect in things") (2007).[6]

---

[5] The language noted in plaintiff's complaint reads as follows:

In the further alternative, and only in the event that it is found that this is a non-maritime [sic], then in that event, it is claimed that Chevron U.S.A., Inc. is liable to Mr. Parta under Louisiana law and the Outer Continental Shelf Act [sic] as is his employer, Grand Isle Shipyard, Inc., it being alleged on information and belief that under Louisiana law, the actions of Grand Isle Shipyard, Inc., amount to that of an intentional tort, and as a result of the negligence of the jack-up barge [sic], believed to have been owned and/or operated pro hac vice by Chevron U.S.A., Inc. [Doc. 1, ¶ 12]

[6] Whether plaintiff is asserting such a claim is unclear.  One could argue paragraph six of plaintiff's original Complaint asserts such a claim.  The paragraph reads as follows:

On the date of the accident, he was required to attempt to enlarge or place an additional section from the jack-up barge to the Chevron platform in inclement weather and *unsafe working conditions* and without adequate sufficient and trained personnel when suddenly, he, while attempting to hook the barge extension to a padeye, and as a result of the *unsafe work place* and in particular the seas, sustained a severe injury to his shoulder, neck and back.

(Emphasis added.)  In plaintiff's opposition memorandum, plaintiff argues the deck extensions were "provided for use by Chevron" [Doc. 40, p. 2], "a 'leapfrog' crane could have been used to hold the upper extension stable" [Doc. 40, p. 14], and "on the upper deck level, the last level, there was no chain hoist to tie off to, thus, the liftboat's crane was the sole device that could be used to attempt to prevent the rocking and pulling as Parta used the come-along to try to get the extension in place." [Doc. 40-3, ¶ 20]

5.  Although not abundantly clear, it appears plaintiff asserts a claim, by way of OCSLA pursuant to Louisiana law, against GIS for intentional tort. [Doc. 1, ¶ 12][7][8]

Defendants address only: (1) plaintiff's claim against Chevron for negligence pursuant to OCSLA; (2) plaintiff's claim against Hercules for negligence pursuant to OCSLA.[9]

## A.  Liability of Chevron

Although not explicitly stated, for these purposes only this Court will assume Chevron is the owner of the platform where the work was being conducted.[10]  According to Chevron, its "on-site representative did not supervise or direct the method of [GIS's] work on the Chevron South Timbalier 134-W platform on May 22, 2005." [Doc. 32-8, ¶ 8]  Chevron asserts it had contracted with GIS to perform the operation at issue. Chevron argues GIS was acting as an independent contractor while performing work for Chevron, citing in support a "Master Service Order and Agreement" and an "Agreement for Mutual Indemnity and Waiver of Recourse," whereby GIS "acknowledged it was

---

[7] The Court notes it has seen no allegation in any of the materials presented thus far, which would support any type of claim for intentional tort.  However, whether any such claim should be dismissed is not before the Court at this time.

[8] For these purposes and these purposes only, the Court has attempted to address the claims of plaintiff as best it can decipher from the pleadings, as defendants are unclear as to which claims they wish this Court to dismiss.  However, the Court by no means makes a finding plaintiff has in fact plead the noted claims, or that the Court's listing encompasses the entirety of plaintiff's claims.

[9] Defendants' motion does not address plaintiff's assertions in his original and supplemental complaints that plaintiff was a borrowed employee of both Chevron and Hercules.  The motion assumes GIS is the sole employer of plaintiff.  Furthermore, although plaintiff mentions in his opposition he has asserted claims pursuant to the Jones Act and 905(b), and defendants, in their reply memorandum, question plaintiff's status as a seaman, no party has moved for summary judgment with regard to plaintiff's seaman status, or claims brought pursuant to the Jones Act or plaintiff's potential status pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA").  Thus, the Court declines to address those claims at this time beyond their obvious impact upon the determination of what law applies to which claims made by plaintiff and against which defendant.

[10] The Court presumes for purposes of this motion only Chevron is the platform owner, as the parties often refer to "Chevron's platform" in their briefing.

performing services as an independent contractor of Chevron."[11]  [Doc. 32, p. 5, Ex. C and D] Chevron further argues it exercised no operational control over GIS.[12]  Chevron therefore argues that because GIS was an independent contractor, and because (according to Chevron) GIS was solely responsible for the safe performance of the installation of the deck extensions, Chevron owed no duty to plaintiff in this matter and therefore cannot be liable as a matter of law, as plaintiff's alleged injury arose out of that operation. Defendant cites <u>Lejeune v. Shell Oil Co.</u>, 950 F.2d 267, 270 (5th Cir. 1992) and <u>Ainsworth v. Shell Oil</u>, 829 F.2d 548 (5th Cir. 1987) in support.

In his opposition memorandum, plaintiff argues Chevron, as the "lease operator," was required

_____

[11] The "Master Service Order and Agreement" submitted by defendants is a form contract dated 1991. The form contains a section entitled "Contractor" with blanks, presumably where Grand Isle Shipyard is identified, however, that portion of the copy submitted by defendants is illegible. Regardless, plaintiff has not contested validity of the contract. Thus, the Court presumes for these purposes only, the parties agree there exists a valid contract between Chevron and GIS.

Additionally, although defendant does not cite the Court to the particular portion of the contract it is relying upon, the Court presumes defendant is relying on paragraph 13 found at page 4, which states as follows:

> CONTRACTOR is responsible for the safe performance of the work, and shall assure the work is performed in accordance with the safe practices, and shall implement and maintain at all times safe procedures, taking all reasonable precautions to protect COMPANY'S personnel and property as well as the personnel and property of CONTRACTOR and third parties. The obligation to implement and maintain safe procedures and safe practices is that of CONTRACTOR: however, CONTRACTOR is additionally obligated to familiarize itself with any safety rules or directives posted at the work locations and with Company's Safe Practices Manual if provided.

[12] Although Chevron admits it had a "company man" stationed on the platform during the performance of the work, and that the company man participated in safety meetings, Chevron argues this does not rise to the level of "operational control," citing <u>Boutwell v. Chevron U.S.A. Inc.</u>, 864 F.2d 406 (5th Cir. 1989) and <u>Duplantis v. Shell Offshore Inc.</u>, 948 F.2d 187, 193 (5th Cir. 1991). Chevron additionally cites deposition testimony of plaintiff wherein he states the Chevron representative did not give plaintiff any instructions in connection with his job and was not in the area of the platform when the injury occurred. Chevron also argues plaintiff testified the Chevron representative "did not participate in guiding, directing or giving instructions to Grand Isle Shipyard concerning the scope of the work that day." [Doc. 32-2, p. 6] This Court's review of plaintiff's deposition shows plaintiff testified that during the safety meetings, the Chevron representative participated in discussions regarding the "job scope of the day," but he "was never over [plaintiffs] shoulder" providing instructions while plaintiff was attaching the deck extensions to the platform. [Plaintiff depo., pp. 75-76]

to perform all operations in a "safe workmanlike manner and free from recognized hazards." [Doc. 40, p. 13]   Plaintiff cites 33 C.F.R. § 142.4(a)(b) and 30 C.F.R. § 250.17 in support.[13]   Plaintiff argues Chevron violated these regulations by not providing proper supervision and not being present in the work area when the accident occurred and thus, Chevron breached a duty, plaintiff argues, was owed to plaintiff.  Plaintiff however has submitted no authority or argument that these particular regulations provide a private cause of action to plaintiff under these facts.[14]

Chevron bears the burden of proving GIS is an independent contractor at trial, and thus Chevron must demonstrate the absence of an issue of material fact with respect to GIS's independent contractor status - merely setting forth conclusory allegations is insufficient.  Lujan, *supra*.  With regard to any claim of negligence brought under OCSLA, Louisiana law would apply against Chevron in its capacity as owner or operator of the platform.  Pursuant to Louisiana law, Chevron would be required to prove the following at trial: (1) a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piece work as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

---

[13] Plaintiff has put forth no evidence showing Chevron is the "lease operator" of the platform, nor has Chevron identified itself as the operator of the platform.  However, the "Agreement for Mutual Indemnity and Waiver of Recourse" does discuss "Chevron's operations in the Gulf of Mexico."  Thus, from what has been presented to this Court, Chevron's actual role on the platform is unclear.

[14] Additionally, this Court's cursory review of the noted regulations indicate the cited regulations have no bearing on this matter. *See e.g.*, 33 C.F.R. § 140.30 and 43 U.S.C.A. § 1349.  The Court further notes that although plaintiff's exhibits were submitted by way of courtesy copy to the Court, they have not been filed into the record, and thus, technically, are not before the Court for purposes of this motion.

Hickman v. Southern Pac. Transport Co., 262 So.2d 385, 390-391 (La. 1972). (citing Amyx v. Henry & Hall, 79 So.2d 483 (La. 1955).  Additionally:

> The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principle test:  the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists.

Id.

Here, the only evidence defendant has provided in support of its argument are the 1991 and 1998 contracts and plaintiff's sparse testimony.  Defendant has provided no affidavit or other testimony from the company representative, no specific work order pertaining to this job (or other competent evidence indicating the scope of the work at issue, if no work order exists), nor any other evidence sufficient to satisfy its burden of demonstrating the absence of material facts with regard to GIS' status as an independent contractor.  Furthermore, although it seems defendant seeks dismissal of *all of plaintiff's claims*, defendant has not addressed those claims found within plaintiff's petition beyond "negligence" of Chevron pursuant to OCSLA, nor has defendant filed a motion for more definite statement pursuant to FED. R. CIV. PROC. 12(e), requiring plaintiff clarify his claims. Consequently, the Court finds defendant has failed to carry its burden of proof, and the motion for summary judgment as to plaintiff's claim for negligence against Chevron brought pursuant to OCSLA is **DENIED**.

## B.  Liability of Hercules

Hercules argues OCSLA provides jurisdiction for plaintiff's claim against Hercules, because at the time of the accident, "the liftboat owned by Hercules was jacked up next to the platform on the OCS," citing Demette v. Falcon Drilling Co., Inc., 280 F.3d 492, 495-96 (5th Cir. 2002), Grubart v.

Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995), and Texaco Exploration & Production, Inc. v. Amclyde Engineered Products Co., 448 F.3d 760, corrected on rehearing, 453 F.3d 652 (5th Cir. 2006). [Doc. 32-2, p. 7][15]

It is unclear whether plaintiff disputes this allegation; however as plaintiff makes claims as a seaman under the Jones Act and under general maritime law for maintenance and cure, this Court assumes this fact is in dispute. Moreover, Demette presents a factual inquiry for determination of OCSLA jurisdiction, yet neither party has presented evidence to place the application of jurisdiction under OCSLA before the Court. Without determination of whether OCSLA or general maritime law applies, in no way can this Court determine which claim or claims are properly before it, as the Court cannot determine which law applies until jurisdiction is determined.

Hercules argues, "The method of work was chosen by GIS. The plaintiff was comfortable with the procedure being used to attach the extensions to the platform; otherwise he would have executed his stop work authority if he 'thought it was unsafe.'" [ Doc. 32-2, p. 8 (quoting plaintiff depo., p. 67)] Hercules further argues plaintiff "admits the liftboat crane operator did not do anything in operating the crane that caused the deck section to move."[16]  [Doc. 32-2, p.2]  Hercules further argues under Louisiana law, "There is no legal duty between two independent contractors. However, a contractor 'owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfilment of its contractual obligation.'" [Id. at p. 9 (quoting Cormier v. Honiron

---

[15] The Court notes the parties have used the terms "jack-up vessel" and "liftboat" to refer to the Hercules' vessel. The two terms are not necessarily synonymous. Typically (although not always) liftboats are smaller vessels used for construction purposes, whereas jack-up vessels are used for drilling purposes. This distinction likely will be relevant when the issue of whether plaintiff's claim against Hercules is brought by way of OCSLA jurisdiction or the general maritime law is properly before the Court.

[16] This Court's review of the cited testimony reveals plaintiff stated to his knowledge the crane operator did nothing wrong, but that he was not watching the crane operator.

<u>Corp.</u>, 771 So.2d 193 (La.App. 3rd Cir. 2000))][17] Hercules argues GIS chose the manner and method of work, "provided the necessary equipment" and had its own on-site supervisors who were responsible for supervision of the work. [Doc. 32-2, p. 9] In its reply memorandum, defendant argues the Hercules liftboat crane operator "merely acquiesced in the Grand Isle Shipyard's request to lift the section of decking and suspend it next to the platform so that Grand Isle Shipyard's employees could perform their work." [Doc. 43, pp. 3-4] Hercules, thus, argues it owed no duty to plaintiff under these circumstances. In the alternative, Hercules argues if it did owe a duty, that duty was not breached, stating, "Hercules Liftboat's alleged duty to the plaintiff did not encompass the risk that he would be injured using a work method selected by Grand Isle Shipyard which involved experienced fabrication employees who had authority to stop any unsafe work method." [Doc. 32-2, pp. 9-10]

Hercules has provided no basis, beyond argument, as to its assertion of the applicable law or factual assumptions made. Thus, Hercules has in no way carried its burden on motion for summary judgment. Other than argument by counsel, Hercules has offered no evidence to support its position Hercules "merely acquiesced" to the supervision and direction of GIS. Additionally, if Hercules "merely acquiesced" to GIS's request to use Hercules' liftboat and crane to attach the deck extensions, that does not end the factual inquiry. If Hercules did "acquiesce[d]" to that request, what legal duty might flow from that choice cannot be determined without knowing what law applies to plaintiff's claims made against Hercules. Additionally, from a factual standpoint, whether or not Hercules used the crane in a negligent manner, or should not have used the crane at all, has not been addressed by the parties such that this Court could grant summary judgment to Hercules, even if the applicable law

---

[17] Hercules cites two other non-binding Louisiana appellate court cases in support of its argument; also, Hercules merely assumes and asserts Louisiana law would apply. This issue has not been properly put before the Court and is determinative.

were established. As such, defendant's Motion for Summary Judgment seeking dismissal of plaintiff's claim against Hercules for negligence brought pursuant to OCSLA is **DENIED.**

### IV. Conclusion

Due to the foregoing, the Motion for Summary Judgment is **DENIED** in its entirety.[18] Plaintiff is **ORDERED** to produce and file into the record **AN OUTLINE** of all claims. The outline is to conform with this Court's standard outline requirements, attached to this ruling as Court Attachment A.

Defendants are to respond to that outline, in outline form in conformity with this Court's standard outline requirements attached. As the parties have indicated they are attempting to set a settlement conference with Magistrate Judge Hill during the month of November, plaintiff's outline shall be submitted to the Court and filed into the record no later than fifteen days following the settlement conference or December 30, 2007, whichever is earlier. Thereafter, defendant shall have fifteen days to provide specific responses to plaintiff's outline.

Lafayette, Louisiana, this _____ day of October, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[18] This Court notes neither defendants nor plaintiff properly presented the necessary legal basis and factual evidence to support or oppose the instant motion for summary judgment. It is unclear what claims plaintiff is making, against which defendant and pursuant to what law. Plaintiff's status as a seaman is determinative of the issue of applicable law, as is the potential application of the OSCLA jurisdiction (and thus, Louisiana law and perhaps the LHWCA) as to Hercules. None of the parties has addressed these threshold issues, notwithstanding having filed motions for summary judgment. Whether the motions for summary judgment were ill advised, premature, or ill conceived is not clear.



RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _10,24,07_
68

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL PARTA | CIVIL ACTON NO. 06-844 |
| VERSUS | JUDGE DOHERTY |
| GRAND ISLE SHIPYARD, INC., ET AL | MAGISTRATE JUDGE METHVIN |

### ORDER

Considering the foregoing Memorandum Ruling,

IT IS HEREBY ORDERED that the Motion for Summary Judgment [Doc. 32] filed by defendants, Hercules Liftboat Company, L.L.C. and Chevron U.S.A., Inc. shall be and is **DENIED** in its entirety; and

IT IS HEREBY FURTHER ORDERED that the Plaintiff file into the record an outline of all claims within fifteen days following the settlement conference, or by December 30, 2007, whichever is earlier. The outline is to conform with this Court's standard requirements, which are attached to this ruling as Court Attachment A. Defendant shall have fifteen days to provide specific responses to plaintiff's outline.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 24 day of October, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE