RECEIVED
DEC 1 7 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DANIEL PARTA | CIVIL ACTON NO. 06-844 |
| VERSUS | JUDGE DOHERTY |
| GRAND ISLE SHIPYARD, INC., ET AL | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Currently pending before the Court is a Motion for Summary Judgment filed by defendants, Chevron U.S.A., Inc. ("Chevron") and Hercules Liftboat Company, L.L.C. ("Hercules"), wherein defendants seek dismissal of all claims against them brought by plaintiff, on the basis that plaintiff "is unable to establish a legal basis for recovery against Chevron or Hercules under any theory of law . . . ." [Doc. 62-2, p.2]

### I. Background

Plaintiff, Daniel Parta, filed this civil action against Grand Isle Shipyard, Inc. ("GIS"), Chevron and Hercules, alleging he sustained personal injuries in a work-related accident on May 22, 2005. At the time of the accident, plaintiff was employed as a "fitter" by GIS, a company which fabricates and repairs offshore platforms. Chevron had entered into a contract with GIS, whereby GIS agreed to install deck extensions to Chevron's platform located on the Outer Continental Shelf off the coast of Louisiana. Chevron had also entered into a time-charter contract with Hercules for the use of Hercules' liftboat, "in order to assist Grand Isle Shipyard in the performance of its work." [Godbold Aff. ¶ 5; Rec. Doc. 62-4, ¶ 5; Rec. Doc. 72-4, pp. 1-2]

According to plaintiff (and undisputed by defendants), on the day of the accident, plaintiff and other GIS employees had installed three deck extensions without incident. On those

installations, the deck extensions were tied off to chain hoists in order to stabilize the extensions. However, on the fourth (and upper most) deck level, there was no chain hoist to tie off the deck extension. Therefore, the Hercules' crane, located on Hercules's vessel and operated by Hercules's employee, was used to stabilize the extension while it was being attached by the GIS crew. According to plaintiff, he was pushing on a "come-along" in an attempt to move the extension in place, when the deck extension jerked (due to the liftboat rocking on the seas), resulting in an injury to plaintiff's shoulder.[1] [Rec. Doc. 49, p.2]

Pursuant to the Master Service Order and Agreement ("contract") entered into by GIS and Chevron, GIS agreed to "perform the services as an independent contractor and not as an employee..."[2] [Contract ¶ 1; *see also* Godbold Affidavit, ¶ 3; Rec. Doc. 72-5, ¶ 4] Additionally, at the time of the accident plaintiff "was working under the direction of the GIS supervisor, Larry Powers, who

---

[1] Defendant notes that following the incident, plaintiff reported to Chevron's on-site representative, David Godbold, and stated at the time of the accident, he had been "properly positioned, felt no excessive pull or strain while using the come-along, and simply felt a pain in his shoulder as he pulled on the handle of the come-along." Plaintiff did not inform Mr. Godbold that any unexpected or excessive movement occurred, or that any unexpected movement caused injury to his shoulder. In fact, according to Mr. Godbold, Mr. Parta specifically stated there was "no excessive pull," and he was operating the come-along handle in a normal fashion when he felt a sharp pain in his shoulder. The incident report noted the cause of plaintiff's injury was due to "repetitive motion." Defendant additionally notes at no time did Mr. Parta or anyone else on location indicate that either the Hercules' crane operator, or the Hercules' crane, played any part in causing or contributing to Mr. Parta's shoulder pain. [Affidavit of Godbold, ¶¶ 7 and 8]

[2] The contract further states:

CONTRACTOR is responsible for the safe performance of the work, and shall assure the work is performed in accordance with the safe practices, and shall implement and maintain at all times safe procedures, taking all reasonable precautions to protect COMPANY'S personnel and property as well as the personnel and property of CONTRACTOR and third parties. The obligation to implement and maintain safe procedures and safe practices is that of CONTRACTOR: however, CONTRACTOR is additionally obligated to familiarize itself with any safety rules or directives posted at the work locations and with Company's Safe Practices Manual if provided.

[Contract ¶ 13; *see also* Godbold Aff., ¶ 13]

was in charge of the Grand Isle Shipyard crew." [Rec. Doc. 62-1, p. 2] David Godbold, a Chevron facility engineer, was serving as Chevron's on-site representative, and was responsible for monitoring the progress of the repair work and reporting back to Chevron. [Godbold ¶¶ 1, 2] According to Chevron, Mr. Godbold was not responsible for supervising GIS' employees. Moreover, Chevron asserts GIS was responsible for implementing safety policies and procedures in connection with its work.[3] [Id. at ¶ 2]

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise

---

[3]While plaintiff agrees his supervisor at the time of the accident was Mr. Larry Powers, he further clarifies:

> However, Mr. Powers was subject to the instruction of Chevron and/or Hercules. Thus, while Mr. Parta's immediate supervisor was Mr. Powers, he was working 'under the direction' of Chevron and/or Hercules. ...

> ... Mr. Parta states that the *onsight* Chevron representative did not supervise or direct the method of GIS-work on the Platform. However, a Chevron representative would instruct the GIS supervisor regarding the Project and, additionally, a Chevron representative would attend each safety meeting. . . Mr. Parta alleges that it was Chevron that directed GIS to install the fourth, uppermost deck extension via the Hercules crane on May 22, 2005.

[Rec. Doc. 72-5, ¶¶ 7, 8]

provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in <u>Lindsey v. Sears Roebuck and Co.</u>, 16 F.3d 616, 618 (5th Cir. 1994) (citations omitted):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted.

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> . . . .
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

Lujan v. National Wildlife Federation, 497 U.S. 871, 884, 888-89 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

### III. Law and Analysis

As already noted, Chevron and Hercules seek dismissal of all claims brought against them by plaintiff. Specifically, defendants address the following claims: (1) plaintiff's claim against Hercules for vessel negligence, pursuant to 33 U.S.C. § 905(b); (2) plaintiff's claim against Chevron for vessel negligence (in its capacity as the time charterer of the Hercules' liftboat), pursuant to 33 U.S.C. § 905(b); (3) plaintiff's claim against Chevron for platform negligence (in its capacity as

platform owner), pursuant to LA. CIV. CODE arts. 2315 and 2317.1; and (4) plaintiff's claim against Chevron for intentional tort.

Plaintiff specifically limits his opposition memoranda to "the claims brought under section 905(b) and (c) of the Longshore and Harbor Workers' Compensation Act ('LHWCA')." [Doc. 72-4, n.1; *see also* Rec. Doc. 49, p.6; Rec. Doc. 55, pp. 2-3] As plaintiff has not carried his burden upon the motion of defendant to address the otherwise valid argument in fact and law by the movants, as to any claim for platform negligence, Chevron's motion for summary judgment as to plaintiff's claim of platform negligence is GRANTED.

Neither party has addressed the claim for intentional tort (other than the claim being identified in defendant's motion for summary judgment), and the record reflects plaintiff dismissed this claim in a previous filing. [*See* Rec. Doc. 66-2, p.2] Furthermore, any claim for intentional tort was brought solely against GIS. [Id.; *see also* Rec. Docs. 49, p.6 and 55, pp. 2-3] Nevertheless, to the extent plaintiff has asserted a claim of intentional tort against Chevron or Hercules, such claim is DISMISSED. Additionally, any other claims asserted by plaintiff against Chevron and/or Hercules not addressed in this Ruling are hereby DISMISSED.

In this Court's previous Ruling issued on October 24, 2007 [Rec. Doc. 49], the Court painstakingly identified all claims potentially asserted by plaintiff in his Complaint, including claims made pursuant to the Jones Act, LA. CIV. CODE arts. 2315 and 2317.1, and 905(b). [Rec. Doc. 49, pp. 5-6] At that time, plaintiff was ordered to file an outline of all claims asserted in this matter, or risk having such claims be deemed waived and abandoned. [Doc. 49-2, p.1] While plaintiff subsequently did identify a Jones Act claim in the outline, he later admitted [Rec. Doc. 66-2, pp. 2-3] "Candidly, after an extensive meeting with Daniel Parta that took place on June 18, 2008 ... it was

determined that according to case law, Daniel Parta is not a member of a vessel or fleet of vessels owned and/or operated by Chevron and/or Grand Isle." In plaintiff's opposition memorandum to the pending motion, however, plaintiff states, "While not conceding the issue of seaman status for purposes of the record, Mr. Parta limits his response herein to claims brought under section 905(b) and (c) of the Longshore and Harbor Workers' Compensation Act ('LHWCA')." [Rec. Doc. 72-4, n.1] Plaintiff has been granted adequate notice and multiple opportunities to address any and all claims against these defendants; defendants have moved for summary judgment *on all claims*, therefore, any claims not addressed in this Ruling are hereby DISMISSED with prejudice for failure of plaintiff to meet his burden in the face of an otherwise validly argued and supported motion filed by movants.

### A. Jurisdiction

As plaintiff is a non-seaman, injured as a result of operations on the Outer Continental Shelf, jurisdiction over this matter exists pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). 43 U.S.C. §§ 1331(a)(1) and (b); Dahlen v. Gulf Crews, Inc., 281 F.3d 487, 492 (5th Cir. 2002); Coulter v. Texaco, Inc., 117 F.3d 909, 911 (5th Cir. 1997).

### B. Applicable Law

The substantive law applicable to plaintiff's claims is the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901, *et seq.*[4] The law applicable to plaintiff's specific claim is

---

[4]Section 1333(b) of the Outer Continental Shelf Lands Act provides:

With respect to disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable under the provisions of the Longshore and Harbor Workers' Compensation Act [33 U.S.C.A. § 901 et seq.]. ...

found at 33 U.S.C. § 905(b) of the LHWCA. Section 905(b) ("Negligence of vessel"), provides in pertinent part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. ...[5]

### 1. Liability of Hercules

For the reasons discussed at length in this Court's Ruling in Gilbert Gallow v. Newfield Exploration Co., et al, Civil Action No. 06-0259, Record Document No. 115, this Court finds, under the facts of this case, the duty owed by Hercules is "the duty of exercising reasonable care under the circumstances of each case." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959).[6] The Court now turns to the issue of whether Hercules breached its duty to plaintiff.

All parties agree "Chevron contracted with Hercules for a liftboat and crew to assist GIS in platform fabrication work," **GIS selected the method of GIS' work on the platform**, and Hercules

---

[5]The Fifth Circuit extends 33 U.S.C. § 905(b) protection to independent contractors covered by the LHWCA. *See, e.g.*, Manuel v. Cameron Offshore Boats, Inc., 103 F.3d 31, 33 (5th Cir.1997).

[6]Following a discussion held with all counsel on September 8, 2008, the Court allowed the parties the opportunity to supplement their briefing, in light of the Court's recent ruling in Gallow, *supra*. [Rec. Doc. 79] Counsel subsequently submitted supplemental memoranda tailored to this Court's ruling in Gallow. [Rec. Docs. 82, 83] In Gallow, the Court conducted an exhaustive jurisprudential analysis, and ultimately concluded the standard for vessel negligence pursuant to § 905(b), in cases involving longshoremen working on the Outer Continental Shelf (*i.e.* drillers, riggers, etc.) as opposed to stevedores (*i.e.* those who load and unload a vessel's cargo), is the standard set forth in Kermarec, *supra*, which is "reasonable care under the circumstances of each case." Id. at 632. Thus, in this matter, Hercules owes plaintiff the duty of exercising reasonable care under the circumstances that existed on May 22, 2005. However, the Court notes even were it to apply the traditional stevedore 905(b) standard of care developed under the jurisprudence (i.e. turnover duty, the duty to protect against hazards arising in areas or equipment under the vessel's active control, and the duty to intervene when the vessel owner knows of a serious hazard and the stevedore improvidently decides to ignore that risk), the result in this matter would be the same. Manuel at 33.

did not "select[] the method of suspending the upper most section of deck that was being installed at the time [plaintiff] claims he was injured." [Rec. Doc. 72-4, pp. 1-2; Id. at 72-5, ¶ 8; Godbold Affidavit, ¶ 7; *see also* Id. at ¶ 5] Additionally, **"Daniel Parta or Grand Isle Shipyard or another employee selected the come-along that was being used to hold the [upper most] deck section in position."** [Id. at ¶ 7][7] (emphasis added) All agree on the day of the incident "weather conditions were not only considered to be appropriate, but as reflected on the post-accident documentation, the weather was actually considered 'calm.'" [Rec. Doc. 62-1, p.11; *see also* plaintiff depo., pp. 56-7]

Furthermore, as a GIS employee, plaintiff had "stop work authority," whereby if plaintiff observed any unsafe condition, he was authorized to terminate the operation. Plaintiff did not implement his stop work authority on the day of the incident. [Rec. Doc. 83, p.4] (Plaintiff had

---

[7]Plaintiff argues in his opposition memorandum: "That GIS instructed the deck extension to be transferred to the Platform by crane does not diminish Hercules' 'active control' over the crane or the deck extension however." [Rec. Doc. 72-4, p.3] Plaintiff cites Fontenot v. McCall's Boat Rentals, Inc., 2005 WL 3541038 (E.D. La. 2005) in support. While Fontenot is a non-binding decision, nevertheless a review of the case reveals it provides no support for plaintiff's position, and in fact, it only bolsters Hercules' position. Fontenot states as follows:

> As to the second Scindia duty, which arises out of the vessel's active control over any hazards, it is well established that
>
>> determining placement of the cargo does not constitute active control. Neither does simply maintaining the position of the ship while the stevedore and lift boat personnel perform all other duties in connection with the loading. For the shipowner to be liable under the second Scindia duty[,] the *vessel must exercise active control over the actual methods and operative details of the longshoreman's work.*

Id. at *8 (quoting Pledger v. Phil Guilbeau Offshore, Inc., 88 Fed.Appx. 690, *1 (5th Cir. 2004)(citations omitted)(emphasis in original)). Here, plaintiff admits he or his employer instructed a Hercules' employee to use the crane to hold the deck extension in place. If simply maintaining the position of a vessel is insufficient to constitute "active control" by the vessel owner, then *a fortiari*, simply acquiescing in GIS instruction to hold the deck extension steady utilizing a crane would also be insufficient to rise to the level of "active control." Plaintiff has not shown such action by Hercules constitutes "active control over the actual methods and operative details of the longshoreman's work." Id.

exercised that authority due to weather conditions on at least one occasion, but he did not do so on this job. [Plaintiff depo., p. 57]) Plaintiff testified had he thought the method of installation on the day of his accident was unsafe, he would have exercised his stop work authority and terminated the operation. [Plaintiff depo., p. 67] Defendants argue any liability based on the decision to use the crane, under these particular circumstances, can only apply to the actual decision maker – GIS.

Hercules argues (and this Court agrees) that to find Hercules breached its duty of reasonable care, the Court would have to find Hercules had a duty to intervene in GIS' decision (and plaintiff's compliance therewith) to use the crane to hold the deck extension steady, despite the fact there is no evidence any person present on the day of the incident indicated this was an unsafe procedure. Moreover, under plaintiff's standard, Hercules' duty would extend not only to actions taken on its liftboat, but would also require Hercules to assess (and exercise authority over) the work Chevron had hired GIS and plaintiff to perform aboard the platform. Plaintiff has provided this Court with no legal authority supporting such an expansive legal duty. Accordingly, Hercules' Motion for Summary Judgment is **GRANTED**.

### 2. Liability of Chevron

As noted, plaintiff has filed a claim against Chevron in its capacity as time charterer of the Hercules Liftboat, pursuant to § 905(b) of the LHWCA. The Fifth Circuit holds, "a time charterer owes a hybrid duty arising from tort law to exercise the control the charter affords it over the timing, route, and cargo of a vessel's journey in a reasonably prudent manner." Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1517 (5th Cir. 1996).

As previously noted, according to Chevron its "on-site representative did not supervise or direct the method of [GIS's] work on the Chevron South Timbalier 134-W platform on May 22,

2005." [Doc. 72-5, ¶ 8; *see also* Godbold aff. ¶ 3] While plaintiff agrees with the foregoing statement, he further clarifies:

> Mr. Parta states that the *onsight* Chevron representative did not supervise or direct the method of GIS-work on the Platform. However, a Chevron representative would instruct the GIS supervisor regarding the Project and, additionally, a Chevron representative would attend each safety meeting. . . Mr. Parta alleges that it was Chevron that directed GIS to install the fourth, uppermost deck extension via the Hercules crane on May 22, 2005.[8]

[Rec. Doc. 72-5, ¶¶ 8] First, plaintiff has offered no evidence (other than argument) to rebut Chevron's sworn statement that Chevron neither supervised nor directed the method of GIS' work, or chose the method for installation of the uppermost deck. Lujan, *supra* ("[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.") Second, merely instructing the GIS supervisor about the project and attending safety meetings is insufficient to impose liability upon Chevron. As stated in Boutwell v. Chevron U.S.A., Inc., 864 F.2d 406, 408 (5th Cir.1989):

> [T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. *There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way.*

Boutwell (quoting McCormack v. Noble Drilling Corp., 608 F.2d 169, 175 n.9 (5th Cir.1979)(emphasis in original).

---

[8]The Court notes this statement appears inconsistent with the following statement contained in his opposition memorandum: "*That GIS instructed the deck extension to be transferred to the Platform by crane does not diminish Hercules' 'active control' over the crane or the deck extension however.*" [Rec. Doc. 72-4, p.3(emphasis added)]

In sum, plaintiff has put forth no evidence (other than conclusory argument) that any person aboard either the platform or the vessel contributed to his injury. Additionally, plaintiff has set forth nothing more than conclusory arguments with regard to his assertion that Chevron was his borrowed employer. First, plaintiff has not raised a genuine issue of material fact as to this issue. *See e.g.* Boutwell, *supra*. Moreover, it would seem the concept of the "borrowed employee" is inapplicable to Chevron, under the facts of this case, in its capacity as time charterer. Rather, that concept would more likely be relevant to Chevron in its capacity as platform owner. *See e.g.* Hogden v. Forest Oil Corp., 862 F.Supp. 1567, n.1 (W.D.La. 1994)(finding that plaintiff was platform owner's borrowed employee at the time of the accident did not affect same defendant's liability in its capacity as time charterer), *aff'd* Hodgen v. Forest Oil Corp., 115 F.3d 358 (5th Cir. 1997). Although the Court has found plaintiff has failed to carry his burden of proof, any claim against Chevron in its capacity as platform owner, the Court notes it has not been presented with any facts whereby it would find Chevron acted as plaintiff's borrowed employer (in any capacity) at the time of the accident.

Accordingly, Chevron's motion for summary judgment is **GRANTED**.

## IV. Conclusion

Due to the foregoing, the Motion for Summary Judgment is **GRANTED** in its entirety. Lafayette, Louisiana, this 17 day of December, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE